**FILED**
MAY 1 9 2015
JULIE RICHARDS JOHNSTON, CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

**SEALED**

UNITED STATES DISTRICT COURT
for the
Eastern District of North Carolina

| | |
|---|---|
| United States of America<br>v.<br>TERRY LAMONT SPELLER<br><br>*Defendant(s)* | ) ) ) ) ) ) ) Case No. 4:15-MJ-1046-KS |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **July 11, 2013 to June 5, 2014** in the county of **Pitt (and elsewhere)** in the **Eastern** District of **North Carolina**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, 1347 | Between in or about July 11, 2013 and June 5, 2014, in the Eastern District of North Carolina and elsewhere, the defendant, TERRY LAMONT SPELLER, knowingly and willfully executed and attempted to execute to a scheme and artifice to defraud, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicaid, a health care benefit program as defined in 18 USC 24(b), in connection with the payment for health care benefits, items, and services. |

This criminal complaint is based on these facts:

See attached Affidavit of Special Agent Madeline Fillman

☑ Continued on the attached sheet.

*Complainant's signature*

Madeline Fillman, Special Agent, HHS-OIG
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/19/15

*Judge's signature*

City and state: Greenville, NC

KIMBERLY A. SWANK, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

## AFFIDAVIT

I, Madeline Fillman, being duly sworn, depose and say as follows:

### IDENTITY AND EXPERIENCE OF AFFIANT

(1) AFFIANT, Special Agent Madeline Fillman, has been employed by the U.S. Department of Health and Human Services, Office of Inspector General, Office of Investigations (HHS/OIG) for over 17 years. Affiant is currently assigned the responsibility of investigating cases involving criminal fraud against various programs funded by the United States Department of Health and Human Services, including the Medicare and Medicaid Programs.

(2) This affidavit is based upon knowledge derived from the affiant's review of reports and analysis of information provided by fellow agents from the North Carolina Attorney General's Office, Medicaid Investigations Division (MID) and the Internal Revenue Service Criminal Investigation, and analysis of information received from person(s) believed to be credible and reliable to state and federal investigators.

(3) This affidavit contains only those facts which are sufficient and necessary to promote the purpose of the affidavit, described below. This affidavit should not be construed to contain all facts known to your affiant and the investigating agencies regarding the matter under investigation.

### A. PURPOSE OF THE AFFIDAVIT

(4) This affidavit is made for the limited purpose of establishing probable cause for the issuance of an arrest warrant for the defendant, Terry Lamont Speller. Based upon the information contained in this affidavit, there is probable cause to believe that Terry Lamont Speller engaged in numerous federal offenses including, but not limited to, Health Care Fraud, in violation of Title 18, United States Code, Section 1347.

### B. BACKGROUND ON THE MEDICAID PROGRAM

(5) The North Carolina Medicaid Program ("Medicaid") is a state-administered health care benefit program aided by federal funds and designed to provide medical assistance for low-income families and children. An individual qualified to receive this publicly funded assistance is referred to as a recipient. For recipients, Medicaid functions like a medical insurance plan, which defrays the cost of receiving covered and medically necessary services.

(6) The Division of Medical Assistance, North Carolina Department of Health and Human Services (herein referred to as "DMA") administers the Medicaid Program. Computer Science Corporation (CSC) formerly HP Enterprise Services is the fiscal agent for the Medicaid Program in that it is responsible for processing and paying Medicaid claims. In paying claims, DMA, and CSC retain and store Medicaid claims, payment records, and correspondence to and from providers of medical services who have participated in the Medicaid Program.

(7) In the Medicaid Program, a "provider" is defined as any individual or entity furnishing Medicaid services under a provider agreement with the Medicaid Agency (42 CFR 400.203). For a provider to obtain reimbursement from the Medicaid Program for providing services to a Medicaid recipient, the provider fills out a claim form by including on the form the provider's name, address and provider number, the patient's name and Medicaid identification number, the date of service, a brief description of the charges, the provider's signature, and date of billing. The provider then mails or electronically submits the claim form to CSC. CSC's operations are located in Raleigh, North Carolina. CSC relies upon the information contained on the claim form to pay the claim as submitted. CSC then causes reimbursement checks to be issued, or alternatively, transmits payments via electronic funds transfer to the provider.

(8) Every provider who participates in the Medicaid Program must apply for and be assigned a unique provider number by DMA. These provider numbers can be used to identify claims filed by, and monies paid to, a certain provider.

(9) Each Medicaid recipient is assigned a unique identification number by the Medicaid Program and can be identified by reference to their unique identification number. Further, individuals who accept Medicaid benefits agree that their records may be reviewed by the Medicaid Program and Medicaid fraud investigators to determine whether services were rendered as billed.

(10) Under the Medicaid Program each claim that a provider submits is considered a separate claim under the provider's agreement. The provider's agreement states that the provider agrees to keep such records as are necessary to disclose fully the extent of services provided to individuals under the state's Title Nineteen plan and to furnish information regarding any payments claimed for providing such services as the State Agency or Department of Health and Human Services may request. The provider further agrees to accept, as payment in full, the amount paid by the Medicaid Program for those claims submitted for payment under that program, with the exception of authorized deductibles and co-insurance.

C. MEDICAID PROGRAM CODE 99215

(11) Medicaid Providers are permitted to bill for Outpatient Health Services ("OHS") only where certain objective criteria have been met. Medicaid requires providers to adhere to the Current Procedural Terminology ("CPT") codes to determine

whether these objective criteria have been met prior to billing Medicaid for OHS.

(12) One form of OHS covered by Medicaid in qualifying circumstances is CPT Code 99215, which pertains to the evaluation of an established patient. To bill Medicaid for the services identified by Code 99215, at least two of three objective components must have been satisfied:
- A comprehensive history was undertaken;
- A comprehensive examination was undertaken;
- The service included medical decision making of high complexity.

(13) Under Code 99215, counseling and/or coordination of care with other physicians, other qualified health care professionals, or agencies must be provided consistent with the nature of the problem(s) and the patient's and family's needs.

(14) When billing for Code 99215, the patient typically presents with problems(s) of moderate to high severity. Typically, <u>forty minutes</u> are spent face-to-face with the patient and or family.

(15) For Medicaid coverage to apply, only a physician or qualified health care professional can render the services described by CPT 99215.

### D. INVESTIGATIVE BACKGROUND CONCERNING SPELLER'S INVOLVEMENT WITH THE MEDICAL OFFICE

(16) The Medicaid Investigations Division (MID) and the Internal Revenue Service Criminal Investigation (IRS-CI) have been investigating Speller's ownership, operation, and affiliation with numerous Medicaid providers including a company known as the Medical Office, which was located in Greenville, North Carolina. The investigation has revealed that in 2013, Speller began to operate the Medical Office in Greenville North Carolina.

(17) During the course of the investigation, Punitha Ida Rathnam MD (hereafter PIR) was interviewed concerning her involvement with Speller and the Medical Office. The investigation and interview revealed that on or about October 2, 2013, PIR, a licensed psychiatrist, was hired by Speller to perform medication management and follow up visits for patients of the Medical Office. These services were to be billed to the Medicaid program under PIR's National Provider Identifier (NPI) 1558564005, and provider number 5914830. Speller was only to use PIR's NPI and provider number to bill for CPT Codes 99204 and 99213 or 99214, which pertain to medication management and follow up visits, respectively.

(18) In fact, the investigation has revealed that Speller used PIR's NPI and provider number to bill Medicaid for CPT Code 99215, a services that PIR admits she did not perform. Medicaid investigators have examined the billing data for PIR's NPI and provider number. As of May 19, 2015, Medicaid records reflect a total of

$4,920,977.03 in payments for CPT Code 99215 billed as if PIR rendered the services.

(19) The investigation has further shown that Terry Speller billed or caused CPT Code 99215 to be billed in PIR's name during a time when she was not employed by Speller. Speller billed or caused CPT Code 99215 to be billed for numerous dates of service from January 1, 2013 through October 1, 2013. PIR began her employment with Speller on or about October 2, 2013. Medicaid paid out $2,367,230.88 for these fraudulent claims. These claims were back-billed to Medicaid between July 11, 2013 and June 5, 2014.

(20) The investigation further reveals that Speller caused PIR's Medicaid payments to be routed into bank account (in the name of Distinct Advantage) owned and controlled exclusively by Speller.

(21) On October 17, 2014 this affiant along with other investigators executed a federal search warrant at the Medical Office and Distinct Advantage Behavior Health business offices. Contained in the documents seized from a safe in Terry Speller's office were Medicaid Electronic Funds Transfer (EFT) forms indicating that PIR requested payments to be made to a Bank of America account number ******90493, routing number ******019. During an interview, PIR stated that her signature had been falsified on these forms. Along with the EFT forms was Check #1047, for Bank of America account number ******90493, routing number ******019. The check had been taped over with a header bearing the name "Punitha Rathanam, MD."

(22) Due to the foregoing false forms, the $2,367,230.88 in fraudulent claims were electronically deposited into a Bank of America account number ******290493, routing number *****0019. The investigation has revealed that this account belongs to Distinct Advantage Behavior Health. Analysis of records for this account further establishes that Speller maintained exclusive control over this account and he benefitted directly and substantially from the aforementioned, fraudulent billings

(23) The investigation further shows that Speller altered PIR's correspondence address with the Medicaid program to a Post Office Box controlled by Speller.

(24) The investigation further reveals that Speller executed a lease for the space occupied by the Medical Office in PIRs name without her knowledge or consent.

(25) Recent interviews further substantiate that Speller caused Medicaid to pay for services that PIR did not render. Recipients have informed investigators that they did not receive the services represented by CPT 99215. Likewise, PIR has confirmed that she did not render the services billed.

(26) On September 18, 2014 Medicaid Recipient (M1), located in Greenville North

Carolina, was interviewed. M1 stated she had never seen PIR and had never heard of the Medical Office. Claims for M1 paid by Medicaid amounted to $3,306.00. The guardian of M1 also confirmed that her daughter had not received any services from the Medical Office and did not know PIR.

(27) On September 18, 2014 Medicaid Recipients (M2),( M3) and (M4), located in Plymouth, North Carolina, were interviewed individually. They stated that they had never seen PIR and had never heard of the Medical Office. Medicaid paid $1,368.00 for M2, $2,964.00 for M3, and $2,394.00 for M4. The guardian of M2, M3 and M4 also confirmed that her children had not received any services from the Medical Office and did not know PIR.

(28) On September 18, 2014 Medicaid Recipients (M5) and (M6), located in Plymouth, North Carolina, were interviewed individually. M5 and M6 stated that they had never seen PIR and had never heard of the Medical Office. Medicaid paid $1,596.00 for services to M5, and $3,192.00 for services to M6. The guardian of M5 and M6 also confirmed that her children had not received any services from the Medical Office and did not know PIR.

E. INVESTIGATION CONCERNING RECEIPT OF PROCEEDS

(29) Agents from the MID and IRS-CI analyzed bank records in an effort to identify the location of proceeds of the fraudulent claims described above. The investigation has established the following:

(30) Distinct Advantage Behavior Health, Tax Identification # ******5926, maintained a business checking account, # ********90493, at Bank of America ("BOA") from June 2012 to at least August 2014.

(31) Speller was the President and Secretary for Distinct Advantage. Speller had complete control and sole signatory authority for BOA account # *****90493.

(32) From June 2012 to August 2014, deposits for BOA *****90493 totaled $5,335,563.28 and withdraws totaled $5,327,518.71.

(33) From February 2013 to June 2014 direct deposits into BOA account # *****90493 from DHHS (Medicaid payments) totaled $5,081,130.81.

(34) From April 2013 to August 2014, Speller withdrew $1,156,440.22 from BOA account #*****90493 via regular checks made payable to him (Speller) and via counter debit withdrawals. The memo section for a substantial number of the regular checks indicated the checks were for payroll or payment. Monthly bank statements also reflect multiple cash withdrawals.

(35) The address on the checks for the Distinct Advantage BOA account # ******90493 is 482 Williamston Dr, Winterville, NC 28590. This is known as

Speller's residence.

### F. CONCLUSION

(36) Based upon the information provided above, there is probable cause to believe that between in or about July 11, 2013 and June 5, 2014, in the Eastern District of North Carolina and elsewhere, the defendant, TERRY LAMONT SPELLER, knowingly and willfully executed and attempted to execute to a scheme and artifice to defraud, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicaid, a health care benefit program as defined in Title 18, United States Code, Section 24(b), in connection with the payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347. Therefore this affidavit seeks the issuance of a warrant for Speller's arrest.

Madeline Fillman, Special Agent
U.S. Dept. of Health and Human Services
Office of Inspector General

Sworn before me on this the ___19th___ day of __May__, 2015.

United States Magistrate Judge Kimberly A. Swank